UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY MACK, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 05 C 2999 |
| DEIRDRE BATTAGLIA, | ) Judge Ruben Castillo |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

On August 25, 2005, this Court issued an opinion and order granting Larry Mack's petition for a writ of habeas corpus under 28 U.S.C. § 2254. (R. 24; R. 25.) The Court granted the petition based on our review of the Illinois Appellate Court's decision affirming Mack's natural life sentence.[1] The Illinois Appellate Court had found that the re-sentencing court violated the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in sentencing Mack to natural life in prison, but that this error was harmless because any jury "would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty." (R. 12, Record, Ex. L, Modified Order of Ill. App. Ct. at 10 (quotation omitted).) We held that the appellate court's order was based on an unreasonable determination of the facts in Mack's case and involved an unreasonable application of the federal harmless error doctrine. (R. 24, Mem. Op. at 28.) As a result, we granted Mack's petition and stated that the Circuit Court of Illinois should re-sentence Mack to a non-extended term of imprisonment of no more than forty years or hold a new sentencing hearing to determine Mack's eligibility for a natural life sentence. (*Id.*)

---

[1] A complete description of the procedural background and facts of this case can be found in this Court's August 25, 2005 opinion, *Mack v. Battaglia*, 385 F. Supp. 2d 751 (N.D. Ill. 2005). (*See also*, R. 24, Mem. Op. at 2-13.)

Both Mack and Respondent Deirdre Battaglia have moved the Court to reconsider aspects of the August 25, 2005 Order. Mack states that reconsideration is warranted because a new sentencing hearing would violate "principles of double jeopardy under Federal and State law, and State law principles barring subsequent prosecutions after a jury verdict in favor of the defendant[.]" (R. 26, Pet.'s Mot. to Reconsider at 1.) Respondent argues that the appellate court judge's finding that Mack's behavior was "brutal and heinous" is "legally irrelevant" because the original trier of fact made the factual determinations necessary to support a natural life sentence. (R. 38, Resp.'s Am. Mot. at 2.) On February 15, 2006, this Court held an oral argument to provide the parties with the opportunity to fully present the complex issues raised in the motions to reconsider. After careful examination of the arguments presented, as well as recent developments in the Seventh Circuit's *Apprendi* case law, we agree with Respondent that reconsideration of our order granting Mack's petition is required.

## LEGAL STANDARDS

Whether to grant a motion to reconsider is a matter squarely within the court's discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). A motion for reconsideration is not an appropriate vehicle for re-hashing arguments already considered and rejected by the court. *See Fisher v. Samuels*, 691 F. Supp. 63, 74 (N.D. Ill. 1988). Instead, the court will only reconsider a prior order where the movant presents newly discovered evidence, establishes a manifest error of law or fact, or demonstrates that the court has "patently misunderstood" its position. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quotation omitted).

2

## ANALYSIS

We will address Respondent's motion first because reconsideration of our prior order granting Mack's petition will render moot Mack's motion to reconsider the portion of our opinion pertaining to his eligibility for re-sentencing.

I.  **Respondent's Motion for Reconsideration**

In support of her motion for reconsideration, Respondent argues that Mack's natural life sentence does not violate the rule in *Apprendi* because the facts necessary to support that sentence were properly found by the trier of fact at the guilt phase of the state court proceedings.[2] (R. 38, Resp.'s Am. Mot. at 4.) In *Apprendi*, the Supreme Court established the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The "statutory maximum" is the maximum sentence that a judge may impose based solely on the facts admitted by the defendant or reflected in the jury verdict. *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 2537 (2004); *see also People v. Swift*, 781 N.E.2d 292, 295-96 (Ill. 2002) (holding that a defendant cannot receive an extended term sentence based on a judge's factual finding unless the defendant was eligible for that sentence "based solely on the facts found by the jury [at the guilt phase] beyond a reasonable doubt"). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."

---

[2]Respondent raised this argument in her answer to Mack's petition, but this Court's opinion focused—as did the parties' briefing—on the propriety of the re-sentencing trial and appellate judges' brutal and heinous finding. Accordingly, it is appropriate for us now to consider Respondent's argument regarding the impact of the original trial judge's findings. *See Fisher*, 691 F. Supp. at 74.

3

*Blakely*, 524 U.S. at 303-04; *see also People v. Rivera*, 777 N.E.2d 360, 369 (Ill. App. Ct. 2002) (noting that a trial court should be "vested with the discretion to render upon a defendant a sentence within the range of penalties statutorily provided by our legislature based upon the offense . . . as well as the relevant evidence presented by the parties at trial and at sentencing.").

In granting Mack's petition, we held that the Illinois Appellate Court's affirmance of Mack's natural life sentence was erroneous because no jury had ever found the facts necessary to support the court's finding that Mack acted in a "brutal and heinous manner indicative of wanton cruelty." Respondent does not challenge the correctness of that holding in the current motion. Rather, she argues that the Illinois Appellate Court's mistakes with respect to the "brutal and heinous" finding are "legally irrelevant." (R. 38, Resp.'s Am. Mot. at 2.) This is so, she argues, because the original trier of fact at the guilt phase of Mack's proceedings had already found the facts necessary to support a natural life sentence under the relevant Illinois statute. (*Id.* at 4 (citing Ill. Rev. Stat., Ch. 38, par. 9-1(b)(6)(1979), *now codified as* 720 ILCS 5/9-1(b)(6), and Ill. Rev. Stat., Ch. 38, par. 1005-8-1(a)(1)(1979), *now codified as* 730 ILCS 5/5-8-1(a)(1)(b)).) Illinois law provides for a sentence of natural life where a defendant is convicted of first degree murder, and the defendant intentionally or knowingly killed another individual in the course of an armed robbery. 720 ILCS 5/9-1(b)(6). Here, the trial judge found—after Mack elected a bench trial for purposes of determining his guilt—that Mack intentionally and knowingly killed Mr. Kolar and that he committed armed robbery. (R. 12, Record, Ex. A, *People v. Mack*, 473 N.E.2d 880, 898 (Ill. 1984).) Thus, Respondent argues that Mack's current natural life sentence is supported properly by facts found beyond a reasonable doubt by the designated trier of fact.

4

There is no dispute that Mack waived his right to have a jury determine his guilt on the murder and armed robbery charges. (*See id.* at 884.) As a result, the trial judge sat as the trier of fact at the guilt phase of the proceedings. Mack was charged with three counts of murder, armed robbery, and armed violence. (*Id.*) After conducting a bench trial, the trial judge found Mack guilty of the three murder counts and two counts of armed robbery.[3] (*Id.*) The three murder charges included: 1) intentionally and knowingly shooting and killing Mr. Kolar; 2) shooting and killing Mr. Kolar with a gun knowing that the shooting created a strong probability of death or great bodily harm; and 3) shooting and killing Mr. Kolar while committing armed robbery. (*Id.* at 898.)

In reviewing these convictions on direct appeal, the Illinois Supreme Court held that because only one man had been murdered, there could only be one conviction for murder. (*Id.*) The Court noted, however, that "[t]here was evidence to support a conviction of all three charges." (*Id.*) The Court upheld Mack's conviction on the charge of "intentionally and knowingly shooting and killing Kolar," because it considered that charge:

> to be the most serious crime of the three charged because an intentional and knowing killing involves a more culpable mental state than either shooting Kolar with a gun knowing the shooting created a strong probability of death or great bodily harm, or shooting and killing Kolar in the course of an armed robbery. Therefore, the conviction of murder for intentionally and knowingly shooting and killing Kolar will be affirmed.

(*Id.*) The Court also upheld Mack's conviction for the armed robbery of the bank's loan officer and stated that there was evidence to support a conviction on the charge of shooting and killing Mr. Kolar in the course of an armed robbery. (*Id.*)

---

[3]The prosecution opted not to pursue the armed violence counts. (*Id.*)

5

Upon reconsideration, we agree with Respondent that Mack's current natural life sentence does not violate the rule in *Apprendi*. The facts necessary to support Mack's life sentence under the applicable statute are that: (a) Mack intentionally or knowingly killed Mr. Kolar; and (b) that he did so in the course of an armed robbery. Ill. Rev. Stat. Ch. 38, par. 1005-8-1(a)(1)(b); Ill. Rev. Stat. Ch. 38, par. 1005-9-1-b(6)(b). As noted above, the trial judge found Mack guilty beyond a reasonable doubt of intentionally or knowingly killing Mr. Kolar and of armed robbery. The Illinois Supreme Court affirmed these convictions and specifically found that there was evidence at the bench trial to support the trial judge's finding that Mack knowingly and intentionally shot Mr. Kolar and that he did so in the course of an armed robbery. (R. 12, Record, Ex. A, *People v. Mack*, 473 N.E.2d at 898.) Because the designated trier of fact found the facts necessary to sustain a natural life sentence, Mack's current sentence satisfies the rule in *Apprendi*. See *Blakely*, 524 U.S. at 303-04 (noting that maximum sentence is that which judge can impose without any additional findings of fact).

Mack argues that he "has never waived his right to have a jury determine the facts necessary to impose an enhanced sentence" and that Respondent "fails entirely to even address the issue of how a **judge** verdict can satisfy the requirement of *Apprendi* that there be a **jury** verdict finding the essential fact." (R. 40, Pet.'s Resp. at 3-4 (emphasis in original).) Mack does not and cannot contest that he agreed that the trial judge should find the facts necessary to support his conviction.[4] Those are the same facts that support his natural life sentence. As the

---

[4]At oral argument, Mack's counsel emphasized that Mack's waiver of his jury right was limited to the guilt phase. (2/15/06 Tr. at 17-19.) While Mack preserved his right to have a jury determine his death penalty eligibility, he does not explain why he had a right to have a jury determine a non-death sentence, which is a power vested in the trial judge by Illinois law. See
(continued...)

Seventh Circuit has acknowledged, *Apprendi* "principally concerns the division of responsibility between judge and jury" and holds that due process requires the jury to make decisions unless the defendant elects a bench trial.[5] *United States v. Brough*, 243 F.3d 1078, 1078-79 (7th Cir. 2001). Because Mack elected to have a judge find the facts necessary to convict or acquit him, and because those same facts support his current natural life sentence, his current incarceration does not offend the *Apprendi* rule.

Any doubt regarding whether the trial court's guilt finding after Mack's limited jury waiver can support his natural life sentence dissolves in the wake of the Seventh Circuit's recent decision in *Jones v. Hulick*, 449 F.3d 784 (7th Cir. 2006). In *Jones*, the defendant waived his right to a jury trial and was found guilty after a bench trial of first degree murder and aggravated vehicular hijacking. *Id.* at 786. The trial judge found Jones eligible for the death penalty but instead imposed a life sentence for the murder as well as a thirty-year sentence for the hijacking.

---

[4](...continued)
*Rivera*, 777 N.E.2d at 369. The limited waiver is sufficient in this case, because the facts found by the trial judge in support of Mack's convictions are the same facts that are necessary to support his natural life sentence.

[5]*See also United States v. Parker*, 245 F.3d 974, 977 (7th Cir. 2001) (noting that by pleading guilty, defendant waived any right to a jury trial and could not contend that the issue of drug quantity—which increased his sentence—should have been submitted to a jury); *United States v. Fields*, 325 F.3d 286, 289 (D.C. Cir. 2003) (noting that under *Apprendi*, "[s]entence maximums depend on convictions, and convictions depend on findings by a jury (unless waived) of the elements of an offense"); *Garcia v. Bowen*, No. 03 C 6085, 2005 WL 2614852, at *14 (N.D. Ill. Oct. 12, 2005) (noting that the *Apprendi* rule is not violated where the offenses are properly charged and submitted to a judge where the right to a jury trial is waived); *Rangel v. United States*, 155 F. Supp. 2d 949, 952 (N.D. Ill. 2001) (noting that *Apprendi* does not cancel a defendant's waiver of his right to a jury trial in a plea agreement); *People v. Ford*, 761 N.E.2d 735, 738-39 (Ill. 2001) (stating that the facts that increase a penalty beyond the statutory maximum need not be submitted to a jury where the defendant waives his jury trial right); *People v. Smith*, 785 N.E.2d 76, 79 (Ill. App. Ct. 2003) (noting that the petitioner waived the right to have aggravating facts proven to a jury when he elected a bench trial).

*Id.* Jones argued that his life sentence violated the rule in *Apprendi* because it rested on the aggravating factor that his victim was killed in the course of another felony, aggravated vehicular hijacking. *Id.* at 790. The Court disagreed, finding that the facts supporting Jones's convictions provided the basis for his life sentence. *Id.* at 791. Specifically, the Seventh Circuit stated:

> [t]he obvious problem Jones encounters on his *Apprendi* claim is that he waived the jury, the judge found him guilty beyond a reasonable doubt of aggravated vehicular hijacking at the guilt phase of the trial, and that was the basis for his life sentence. Necessarily, then, the sentencing factor    aggravated vehicular hijacking—was found beyond a reasonable doubt, whether the statute then required it or not.

*Id.* While Jones waived his jury right at all stages of the proceeding, *id.* at 790, and Mack waived his jury right only with respect to the guilt phase, the Jones decision makes clear that facts found beyond a reasonable doubt with respect to an aggravating factor at the guilt phase of a trial are sufficient to satisfy the *Apprendi* rule. Thus, because the properly-designated trier of fact found the facts necessary to apply the aggravating factor supporting Mack's life sentence, that sentence does not offend the rule in *Apprendi*. *Jones*, 449 F.3d at 791.

A recent case from this district is similarly persuasive. In *Mitchell v. Uchtman*, the defendant was convicted of armed robbery and first degree murder following a bench trial in state court. No. 04 C 3648, 2005 WL 947297, at *1 (N.D. Ill. Apr. 18, 2005). He received a natural life sentence for the murder conviction under 720 ILCS 5/9-1(b)(6). *Id.* at *3. The defendant sought federal habeas relief, arguing that his natural life sentence was unconstitutional because a jury did not determine the facts that enhanced his sentence beyond the statutory maximum: namely, that he committed murder in the course of an armed robbery. *Id.* After noting a procedural bar to his claim, the Court addressed the merits and found that:

8

[the defendant's] waiver form includes the charges of murder and armed robbery. He thus waived his right to have a jury determine the validity of the factual allegations surrounding the armed robberies. A judge determined that the evidence proved beyond a reasonable doubt that Mitchell committed the robberies. Therefore, there was no *Apprendi* violation.

*Id.* Similarly, Mack waived his right to have a jury determine the validity of the factual allegations surrounding the shooting of Mr. Kolar in the course of an armed robbery. Mack was charged with intentionally and knowingly shooting Mr. Kolar and with armed robbery stemming from the same course of events. In waiving his right to have a jury determine the factual basis for these elements of the charges, Mack effectively waived his right to have a jury determine the factual basis that would support a natural life sentence under Illinois law. *See, e.g., People v. Brooks*, 765 N.E.2d 1160, 1162-63 (Ill. App. Ct. 2002). The trial judge determined beyond a reasonable doubt that Mack shot Mr. Kolar intentionally and knowingly in the course of an armed robbery, and the Supreme Court of Illinois upheld those findings. Those are the only facts necessary to support Mack's natural life sentence. As a result, we cannot find that his current natural life sentence violates the rule in *Apprendi*.[6]

---

[6]Even if we found that Mack's life sentence violates *Apprendi*, there is a strong argument that given the facts supporting his conviction, any error was harmless. Mack argued in his petition for habeas relief that harmless error can never apply to an *Apprendi* violation, but this argument has been eviscerated by the Supreme Court's recent holding in *Washington v. Recuenco*, 126 S.Ct. 2546, 74 USLW 4460 (Jun. 26, 2006). In *Recuenco*, the Supreme Court held that the failure to submit a sentencing factor to the jury in violation of *Apprendi* is subject to harmless error analysis. *Id.* at 2553. In applying harmless error analysis, we ask whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). Here, on the one hand, considering only the evidence at the original trial and Mack's convictions on the first degree murder and armed robbery counts, it appears that any *Apprendi* error could certainly be harmless. On the other hand, if we take into account Mack's evidence at the re-sentencing hearing that supports his assertion that the shooting was accidental, we could not say that any reasonable juror would necessarily find that Mack intentionally shot Mr. Kolar. Because we have concluded, however,
(continued...)

In our August 25, 2005 opinion, we held that because no trier of fact had ever found that Mack's behavior was "brutal and heinous," his natural life sentence based on the re-sentencing judge or appellate judge's independent finding that his conduct met that criteria violated the rule in *Apprendi*. We stand by that holding. Upon reconsideration, however, we find that the facts necessary to support a natural life sentence—namely, that Mack shot Mr. Kolar intentionally and knowingly in the course of an armed robbery—were indeed found by the originally-designated trier of fact, and so there is a basis for his sentence that does not violate the *Apprendi* rule. The re-sentencing jury's verdict stating that it did not unanimously find that Mack acted knowingly and intentionally when it considered Mack's death penalty eligibility does not negate the original trial court's finding—which was affirmed by the Illinois Supreme Court—that Mack acted knowingly and intentionally.[7] Thus, the appellate court's error at the post-conviction stage does not lead to the conclusion that Mack's custody violates federal law, as required for relief under the federal habeas statute. 28 U.S.C. § 2254(a). As a result, upon reconsideration we find that Mack is not entitled to habeas relief based on the imposition of the natural life sentence.

---

[6](...continued)
that Mack's life sentence comports with the rule in *Apprendi*, we need not engage in this difficult inquiry.

[7]The parties dedicate part of their briefs on reconsideration to arguing over the effect of the re-sentencing jury's verdict. (R. 38, Resp.'s Am. Mot. at 7-8; R. 40, Pet.'s Resp. at 4-6.) We found that verdict relevant in our original opinion to the extent that it contradicted the appellate court's holding that any jury would find that Mack's actions were committed in a "brutal and heinous" manner. (R. 24, Mem. Op. at 19-20.) We now find that the appellate court's errors are not the only basis supporting Mack's natural life sentence. As a result, any tension between the appellate court's finding and the re-sentencing jury's inability to find unanimously that Mack was eligible for the death penalty based on the relevant aggravating factors does not effect our determination that Mack's natural life sentence is supported by the original trier of fact's factual findings.

Because this Court has reversed its previous grant of Mack's habeas petition, we must address the remaining argument that Mack made in his petition for habeas relief which we did not address originally. Specifically, Mack argues that Justice Hartigan's role in the state court proceedings violated his due process rights. (R. 1, Pet. at 20-22.) This argument deserves a hard look and we will fully address it below.

## II. Due Process Violation

In his petition for habeas relief, Mack argues that his right to due process under the Fourteenth Amendment was violated because Justice Hartigan—who was the acting Illinois Attorney General at the time of Mack's conviction and direct appeal—served as the appellate court judge who affirmed Mack's natural life sentence at the post-conviction stage.[8] (R. 1, Pet. at 20-22.) Under the federal habeas statute, the burden lies squarely on Mack's shoulders to demonstrate that Justice Hartigan's adjudication of his case in the state court proceedings was contrary to his clearly established rights under the Fourteenth Amendment. 18 U.S.C. § 2254.

Mack correctly points out that the Supreme Court has long held that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." (R. 1, Pet. at 21 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).) Due process under the Fourteenth Amendment requires the absence of actual bias. *Murchison*, 349 U.S. at 136. It also prohibits subjecting a defendant to a court's judgment where the judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Tumey*

---

[8]We will address this claim despite our finding that Justice Hartigan's decision regarding the "brutal and heinous" nature of Mack's actions is not relevant to whether his current natural life sentence violates the rule in *Apprendi*. We do so because harmless error standards do not apply to claims of judicial bias. *Bracy v. Schomig*, 286 F.3d 406, 414 (7th Cir. 2002).

*v. Ohio*, 273 U.S. 510, 523 (1927); *see also Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824 (1986). Evidence of actual bias, however, is not a prerequisite to a due process claim. *See Murchison*, 349 U.S. at 136. Instead, evidence that some influence "would offer a possible temptation to the average . . . judge to . . . lead him to not to hold the balance nice, clear and true" may be sufficient to establish a due process violation. *Aetna*, 475 U.S. at 825 (quoting *Ward v. Vill. of Monroeville*, 409 U.S. 57, 60 (1972)). Whether a judge's interest in a case violates due process is not a precise test; instead, we must consider the "circumstances and relationships" involved to determine whether the judge's involvement threatened the defendant's right to receive a fair trial. *Murchison*, 349 U.S. at 136.

The Seventh Circuit has given substantial clarity to the boundaries of this rather fluid test. In *Del Vecchio v. Illinois Department of Corrections*, the Seventh Circuit clarified that "judges for the most part are presumptively capable of overcoming [biasing] influences and rendering evenhanded justice; and only a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness." 31 F.3d 1363, 1373 (7th Cir. 1994). Accordingly, "bad appearances alone should not require disqualification to prevent an unfair trial." *Id.* at 1371. Instead, in the absence of actual bias we must ask whether a judge may face some significant possible temptations toward bias. *Id.* at 1371-72. Those possible temptations, however, will most often not include "matters of kinship, personal bias, state policy, [or] remoteness of interest . . . ." *Id.* (quoting *Aetna*, 475 U.S. at 820). Instead, "[t]o prove disqualifying bias, a petitioner must offer either direct evidence or 'a possible temptation so severe that we might presume an actual, substantial incentive to be biased.'" *Franklin v. McCaughtry*, 398 F.3d 955, 960 (7th Cir. 2005) (quoting *Del Vecchio*, 31 F.3d at 1380). Where

smoking gun evidence is absent, a petitioner may rely on circumstantial evidence to establish bias. *Id.*

This is a case without any "smoking gun" evidence that Justice Hartigan was actually biased or was under the influence of a serious temptation to rule against Mack. Respondent has asserted that Justice Hartigan "played absolutely no role" in Mack's prosecution and that "at most," Justice Hartigan had "only generally supervisory powers over the case" while serving as attorney general. (R. 11, Answer at 15.) Respondent submitted the affidavits of three attorneys involved in the Mack proceedings to support these assertions. (R. 19, Resp.'s Supp. Exs., Exs. P, Q & R.) Kevin Sweeney states that while the Illinois Attorney General's name would appear on briefs filed in the Illinois Supreme Court on death penalty cases at the time of Mack's direct appeal, no attorney general had any personal role in briefing or arguing those cases during that period. (*Id.*, Ex. P, Sweeney Aff. ¶¶ 5-6.) Sweeney—who briefed and argued the 1989 Mack case before the Illinois Supreme Court—further states that Justice Hartigan had no involvement in that process. (*Id.* ¶ 7, 13.) Michael Weinstein—who was the Acting Chief of the Criminal Appeals Division when the Mack case was tried and on direct appeal—states that the office of the Illinois Attorney General played no active role in Mack's conviction or direct appeal and that Justice Hartigan played no role in the Mack case other than affixing his name to the Cook County's brief in the Illinois Supreme Court. (*Id.*, Ex. Q, Weinstein Aff. ¶¶ 2, 4, 7, 9.) Finally, LuAnn Rodi Snow—the Assistant State's Attorney who wrote the state's brief on direct appeal in the Mack case—states that she had no communications with Justice Hartigan in preparing the brief nor did his office play any role in writing the brief or arguing the case. (*Id.*, Ex. R, Rodi Snow Aff. ¶¶ 4-6.)

13

Mack argues that these affidavits are "clearly incomplete" because they fail to explain the manner in which then-Attorney General Hartigan conformed to the Illinois State's Attorney Act, which requires the state's attorney to give the attorney general a manuscript of a proposed brief to be filed in the Illinois Supreme Court. (R. 20, Pet.'s Resp. to Supp. Exs. at 3-4.) The affidavits, however, do not suggest that then-Attorney General Hartigan never received the briefs; instead, they demonstrate that he played no active role in their preparation. Mack further argues that the affidavits do not explain why the attorney general would not review a proposed brief prior to signing it when the rules of the Illinois Supreme Court and the Federal Rules of Civil Procedure state that an attorney's signature indicates that he has read the document and that the arguments are made in good faith. (*Id.* at 5-6.) Again, the affidavits do not suggest a real conflict with these rules.[9] The affidavits state that Justice Hartigan had no role in preparing, briefing, or arguing the case before the Illinois Supreme Court. Then-Attorney General Hartigan may have read the briefs in conformance with the rules that Mack cites and signed off on them without giving any editorial feedback or participating in further drafts.

Nor can we find that Mack has met his burden of showing that by reading and signing the Illinois Supreme Court briefs in a supervisory role, Justice Hartigan later faced an incentive to rule against Mack in the post-conviction proceedings. *Del Vecchio*, 31 F.3d at 1371-72. The issues argued in the briefs in which Justice Hartigan's name appears dealt with Mack's appeal of

---

[9]Even if then-Attorney General Hartigan signed the briefs without complying with these requirements, that would only weaken Mack's argument that his participation in the direct appeal proceedings created a strong possibility of bias at the post-conviction stage.

14

his conviction and death sentence and later his *Batson* claims.[10] The issue that Justice Hartigan resolved in his role as an appellate court justice was whether the re-sentencing judge at the post-conviction stage violated *Apprendi* in sentencing Mack to natural life imprisonment. Given the detachment between the issues that Justice Hartigan may have reviewed as Attorney General—and even then, as the evidence shows, in at most a supervisory capacity—and the issues he had to resolve many years later in his role as justice, we cannot say that Mack has provided even circumstantial evidence of a bias or lack of objectivity sufficient to establish a due process violation. *See, e.g., Aetna*, 475 U.S. at 820 (noting that matters of personal bias or state policy are seldom sufficient to establish a due process violation).

In his petition, Mack relies solely on *In re Murchison*, where the Supreme Court found that a judge who had previously served as a "one man grand jury" out of which contempt charges arose could not later sit as the judge presiding at the contempt hearing to resolve the same charges. 349 U.S. at 138-39. In so finding, the Supreme Court noted that "[a]s a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' secret session." *Id.* at 138. This is because his recollection of what went on in the grand jury room would interfere with whatever evidence was presented at the hearing. *Id.* In this case, by contrast, Mack has not presented any evidence or argument to suggest that Justice Hartigan's supervisory role in the state court proceedings—which was doubtlessly similar to his role in countless other criminal proceedings during his years as attorney general—would have left any lasting impression sufficient to sway his partiality at the post-conviction stage.

---

[10] The only brief bearing then-Attorney General Hartigan's signature that Mack has submitted to advance these arguments is the Supplemental Brief and Argument for the People on the *Batson* Issue. (R. 20, Pet.'s Resp. to Supp. Exs., Ex. A.)

15

The additional cases that Mack relies upon in his response to Respondent's supplemental exhibits are equally distinguishable. In *Tumey*, the judge's participation in the defendant's case violated due process because the judge—who was the town mayor—had a direct pecuniary interest in the outcome of the case because he was entitled to hold the legal fees taxed in his favor which were the subject of the case. 273 U.S. at 520, 523. He would not have received those fees had he acquitted the defendant. *Id.* In *Aetna*, the sitting judge had a pending lawsuit in a similar case and his judicial decision had the potential to impact the outcome of that case. *Id.* at 822-23. Thus, the judge had a direct pecuniary interest in the outcome of the case in which he sat in judgment. *Id.* at 824. Finally, *Vasquez v. Hillery* dealt with the bias attributed to a grand jury that was selected based on race. 474 U.S. 254, 263 (1986). None of these cases lend real support to Mack's argument that Justice Hartigan's role in the post-conviction proceedings violated Mack's due process rights based on Justice Hartigan's former supervisory role as Attorney General. For all of these reasons, we find that Mack has not shown based on the record before us that he is entitled to relief under 18 U.S.C. § 2254 arising from his due process claims.

Finally, Mack argues that if we deny relief on his due process claims based on the current record, we should allow him to conduct discovery pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases.[11] (R. 20, Pet.'s Resp. to Supp. Exs. at 7-9.) Mack's request is procedurally deficient because Rule 6 requires a party requesting discovery to "include any proposed interrogatories and requests for admission" and to "specify any requested documents" with the discovery request. Mack, however, has not submitted any of the specified discovery documents.

---

[11] We will consider this argument to avoid further delay in these proceedings even though Mack asserted it only in his response to the supplemental exhibits rather than in his petition for a writ of habeas corpus.

Even overlooking this procedural problem, we do not find that Mack has shown good cause for his discovery request as required by Rule 6(a). To establish good cause for purposes of Rule 6(a), Mack must show that "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 295 (1969)). In *Gramley*, the Supreme Court found that discovery was warranted under Rule 6 where the petitioner submitted evidence of the judge's corruption and made specific allegations that the petitioner's attorney took actions to deflect suspicion from the judge's bias in other cases. *Id.* at 909. By contrast, good cause is not shown where the evidence offered by the petitioner in support of his claim is only "slight." *Hubanks v. Frank*, 392 F.3d 926, 933-34 (7th Cir. 2004), *cert. denied*, 125 S. Ct. 1998 (2005).

Mack has not alleged that Justice Hartigan performed anything other than a supervisory function as Attorney General during the state court proceedings. Respondent's evidence demonstrates that, at most, then-Attorney General Hartigan's role consisted of reviewing and signing the briefs to be filed with the Illinois Supreme Court. Mack has not explained why discovery might lead to evidence that Justice Hartigan's role was more substantial or involved. Instead, he relies on the "illogic of Justice Hartigan's decisions" and an apparent irregularity in the assignment of Mack's appeal to Justice Hartigan's division, although he disclaims any suggestion that Justice Hartigan had any hand in the transfer. (R. 20, Pet.'s Resp. to Supp. Exs. at 8-9.) These allegations are not sufficient to overcome the presumption that Justice Hartigan acted impartially. *See Franklin*, 390 F.3d at 959-60. As a result, Mack has not shown good cause to justify opening this case up to further discovery based on his judicial bias claims.

## CONCLUSION

This Court regrets the impact that today's decision must have with respect to Mack's hope for a shortened sentence—a hope that was stoked by our August 25, 2005 opinion—but we find that reconsideration is necessary in light of the Seventh Circuit's recent *Apprendi* case law, and in particular the breadth of the recent decision in *Jones*, *see* pages 7-8, *supra*. We conclude that the facts necessary to support Mack's natural life sentence were properly found by the original trier of fact, and thus his current custody does not violate federal law as required for habeas relief pursuant to 28 U.S.C. § 2254. As a result, Respondent's amended motion for reconsideration is granted. (R. 38-1.) Given the complexities of this determination, however, we find that Mack has "has made a substantial showing of the denial of a constitutional right" and so we issue *sua sponte* a certificate of appealability on this issue pursuant to 28 U.S.C. § 2253(c)(2).

We also find that Justice Hartigan's role in the state court proceedings does not violate Mack's due process rights, nor has Mack shown the good cause necessary to support a discovery request on this issue. Thus, we deny Mack relief on his due process claim as stated in his petition for a writ of habeas corpus. (R. 1-1.) Because we have reconsidered our previous entry of judgment in Mack's favor, Mack's motion for reconsideration is denied as moot. (R. 26-1.)

Finally, the Court feels compelled to acknowledge the superlative efforts that Mack's attorney, John L. Stainthorp, has made on Mack's behalf throughout these proceedings. There can be no doubt that there are strong legal and equitable arguments that mitigate against Mack's current natural life sentence. The Court believes that these arguments need to be presented in the forums still available in the state's executive branch, because the judicial branch of government does not have an available remedy in light of ever-developing post-*Apprendi* case law.

ENTERED: /s/ Ruben Castillo
Judge Ruben Castillo
United States District Court

Dated: July 28, 2006